Filed 6/16/14  In re Jimmy J. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re JIMMY J., a Person Coming Under the Juvenile Court Law. | B251261 |
| | (Los Angeles County Super. Ct. No. CK74739) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. Q.M., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Annabelle Cortez, Judge.  Affirmed.

David A. Hamilton, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel and Tracey F. Dodds, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Jimmy J. was born in April 2013 with a positive toxicology screen for marijuana. His mother, Q.M., also tested positive for marijuana. Jimmy was detained from Q.M. at birth and later removed from her custody after the juvenile court sustained a petition under Welfare and Institutions section 300,[1] subdivision (b), alleging Q.M.'s history of marijuana abuse, which resulted in the termination of her parental rights over an older child several months earlier, and her continued use of marijuana, even while pregnant with Jimmy, rendered her incapable of caring for Jimmy and endangered Jimmy's safety and well-being. Q.M. contends the evidence is insufficient to support the court's jurisdiction finding and disposition order. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Dependency Petition*

On April 26, 2013 the Los Angeles County Department of Children and Family Services (Department) filed a section 300 petition alleging Jimmy was born suffering from a detrimental condition identified as "a positive toxicology screen for marijuana." Q.M. also tested positive for marijuana at the same time, and the Department alleged Q.M. used marijuana while she was pregnant. The petition also alleged Q.M.'s parental rights over her older (preschool-age) daughter, Emily,[2] had been terminated in 2012[3]

---

[1]    Statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]    The spelling of Emily's name varies throughout the record. We use the common spelling for consistency and clarity.

[3]    Q.M. gave birth to Emily in May 2008 when she was only 15 years old. In September 2008 the Department initiated dependency proceedings on Emily's behalf due to domestic violence between Q.M. and her boyfriend and Q.M.'s inability to care for Emily as a result of her marijuana use. In November 2009 Q.M. herself, along with her younger siblings, became the subject of dependency proceedings due to severe domestic violence and sexual abuse in their family home. Jurisdiction over Q.M. was terminated in June 2012 when she was 19 years old. Q.M.'s parental rights over Emily were terminated in July 2012.

2

after Q.M. had failed to reunify with her due, in part, to Q.M.'s continued abuse of marijuana.[4]

2. *The Jurisdiction and Disposition Hearing*

The Department's May 29, 2013 report prepared for the jurisdiction hearing described Q.M.'s history of marijuana use and her varying explanations for her and Jimmy's positive toxicology tests:  Initially Q.M. told hospital admissions staff she had smoked marijuana during her pregnancy.  She later told her nurse and social workers she drank a tea prepared for her by a friend's mother one to two weeks before Jimmy was born because she was feeling ill.  She did not realize it at the time, but now believes the tea contained marijuana.  She also stated that about one week before Jimmy was born she was at a friend's "4/20" party where others were smoking marijuana.[5]  Although she did not smoke marijuana at the party, she thought the positive test could have been the result of her inhaling second-hand smoke.  Q.M. denied any history of marijuana abuse.  She acknowledged trying marijuana for the first time when Emily was four months old, about the time of the dependency proceedings were initiated in that case, but Q.M. did not like marijuana and claimed not to have used it since.

The Department reported that, between the time of Jimmy's detention on April 26, 2013 and the filing of its May 29, 2013 jurisdiction report, Q.M. had enrolled in a parenting program and in an outpatient drug treatment program and had tested negative for drugs on May 7, 2013 and May 17, 2013.  The jurisdiction hearing was continued for a contest, and the court ordered the Department to provide a supplemental report.  In a last-minute information for the court prepared on July 26, 2013, the Department reported Q.M. had submitted to weekly random drug testing from May 24, 2013 through July 22,

---

[4]     The petition also alleged Jimmy's father, Luis J., had a history of abusing marijuana.  That allegation was dismissed at the jurisdiction hearing for insufficient evidence.

[5]     Citing Wikipedia, the jurisdiction report explained 4/20 is a code-term used "primarily in North America that refers to the consumption of cannabis and by extension, as a way to identify oneself with cannabis subculture."

2013. She had 10 negative drug tests and missed three tests. However, Q.M. quit the substance abuse program citing conflicts with her work schedule and the cost of the program following the termination of her Medi-Cal benefits. Although the Department found a no-cost outpatient substance abuse program for Q.M. to attend, it was located in Los Angeles; and Q.M. told social workers it was too difficult to attend the program and make it back to her job in Irwindale.

In another last-minute information for the court in connection with the jurisdiction hearing, which had been continued to August 28, 2013, the Department reported Q.M. had enrolled in a six-month substance abuse program in Covina on July 30, 2013 consisting of 24 individual counseling sessions, 24 alcohol and drug education group sessions, 48 Alcoholics Anonymous meetings and random drug testing. Q.M. had missed the first two individual sessions because, she claimed, she was confused and unaware of the program requirements. She attended three individual sessions, four group sessions and, according to the last-minute information, had submitted to random drug testing.[6]

At the hearing, continued to August 29, 2013 due to court congestion, Q.M. contested jurisdiction, submitting the issue on the Department's reports. She argued the petition should be dismissed because the evidence was insufficient Jimmy was born with a detrimental condition: There was no evidence, she argued, that Jimmy had suffered any ill effects as a result of having marijuana in his system. Moreover, there was no evidence she was unable to care for him. The court sustained the petition. In a lengthy explanation for its decision, the court stated, "The court notes that — acknowledges that past conduct alone does not create a risk of harm to the child. However, the court is not relying upon past conduct alone with respect to making a determination there is risk of harm to Jimmy. The mother does have a prior history with the Department with Emily [S.][;] on 9-24-2008 there w[ere] allegations of mother using marijuana and that case ended up with the mother's [family reunification services] terminated on 5-20-10 and the child being placed for adoption on 7-24-2012. So there was—there is a history of the

---

6       The record does not contain information as to the results of any August drug tests.

4

mother using marijuana. With respect to the current[] risk . . . we see ourselves a year later with the parental rights terminated and Jimmy . . . born with a positive toxicology screen for marijuana. The court also finds that this issue remains unaddressed with the mother . . . and it is still a current issue for Jimmy. Mother has missed tests and has stopped attending programs according to the report and has missed sessions [in her drug treatment program]. Mother's explanation for the positive toxicology according to the report on page 11 indicates that the mother changed her story about the drug use many times . . . . When you look at the totality of the facts, there is a preponderance of evidence that the issues remain unresolved for the mother."

The court declared Jimmy a dependent child of the court, found there was no reasonable means to protect him other than removing him from Q.M.'s custody and placed him with his father under the supervision of the Department. The court set a section 364 review hearing for February 27, 2014, which was continued to May 29, 2014. Q.M. filed a timely appeal.

## DISCUSSION

1. *Standard of Review*

"'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citations.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.] '"[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could [make the ruling in question].""" [Citation.]'" (*In re I.J.* (2013) 56 Cal.4th 766, 773; accord, *In re Angelia P.* (1981) 28 Cal.3d 908, 924; *In re David M.* (2005) 134 Cal.App.4th 822, 828.)

5

2. *The Court's Jurisdiction Finding Is Supported by Substantial Evidence*

Section 300, subdivision (b), authorizes the juvenile court to assume jurisdiction over a child when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child . . . or by the inability of the parent . . . to provide regular care for the child due to the parent's . . . mental illness, developmental disability or substance abuse." Although section 300 generally requires proof the child is subject to the defined risk of harm at the time of the jurisdiction hearing (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1396; *In re Rocco M.* (1991) 1 Cal.App.4th 814, 824 (*Rocco M.*), the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child. (*In re N.M.* (2011) 197 Cal.App.4th 159, 165.) The court may consider past events in deciding whether a child presently needs the court's protection. (*Ibid*.) A parent's "'"[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue.'" (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1216 (*Christopher R.*); accord, *In re S.O.* (2002) 103 Cal.App.4th 453, 461.)

Q.M. contends the evidence is insufficient that Jimmy suffered from any detrimental condition or was at a substantial risk of harm. Citing Penal Code section 11165.13,[7] a provision of the Child Abuse and Neglect Reporting Act (Pen. Code, § 11164 et seq.), Q.M. argues a newborn's positive toxicology screen at the time of delivery, by itself, is insufficient evidence of abuse or neglect and, by logical extension, an insufficient basis for the assertion of dependency jurisdiction. Whatever the applicability of Penal Code section 11165.13 in dependency proceedings, there was much more here than a positive toxicology test at birth to support jurisdiction. Q.M. had a

---

[7]     Penal Code section 11165.13 provides, "For purposes of this article, a positive toxicology screen at the time of the delivery of an infant is not in and of itself a sufficient basis for reporting child abuse or neglect. However, any indication of maternal substance abuse shall lead to an assessment of the needs of the mother and child pursuant to Section 123605 of the Health and Safety Code. If other facts are present that indicate risk to a child, then a report shall be made [to the county welfare or probation department]."

history of marijuana use that was found to have rendered her incapable of caring for another young daughter in a prior dependency proceeding; when Q.M. gave birth to Jimmy, both she and Jimmy tested positive for marijuana, strongly suggesting Q.M. had used marijuana throughout the final stages of her pregnancy; Q.M. showed a total lack of insight into the problem, denying that her marijuana use had contributed to her loss of custody and parental rights as to Emily or that she had knowingly used marijuana while pregnant with Jimmy. Instead, she offered varying and, at times, conflicting explanations for Jimmy's positive toxicology screen without taking responsibility for her problem. In addition, while Q.M. made some appropriate efforts to address her marijuana addiction prior to the jurisdiction hearing, she quit programs and missed several drug tests.

Q.M.'s reliance on *In re Drake M.* (2012) 211 Cal.App.4th 754 (*Drake M.*) is misplaced. The *Drake M.* court observed generally that prescribed marijuana use was not synonymous with "substance abuse" and thus, by itself, was insufficient to support jurisdiction under section 300, subdivision (b). (*Drake M.,* at p. 764 ["The statute is clear, however, jurisdiction based on 'the inability of the parent or guardian to provide regular care for the child due to the parent's . . . substance abuse,' must necessarily include a finding that the parent at issue is a substance *abuser*. (§ 300, subd. (b).) We have previously stated that without more, the mere usage of drugs by a parent is not a sufficient basis on which dependency jurisdiction can be found."].) Other courts have made similar pronouncements. (See *In re Destiny S.* (2012) 210 Cal.App.4th 999, 1003 ["It is undisputed that a parent's use of marijuana[, hard drugs, or alcohol] '*without more*,' does not bring a minor within the jurisdiction of the dependency court"].)

As we explained, unlike in *Drake M.* or any of the other cases on which Q.M. relies, this case does not involve a casual or prescribed use of marijuana with no history or evidence of risk of harm. Q.M. demonstrated a persistent and irresponsible use of marijuana that endangered one child and put her newborn at a similar risk of harm. That evidence, coupled with Q.M.'s inability at the time of the jurisdiction hearing to make sufficient progress in a drug program, was more than sufficient to support the exercise of dependency jurisdiction over Jimmy. (See *Christopher R., supra,* 225 Cal.App.4th at

7

pp. 1218-1219 [mother's use of cocaine during last months of her pregnancy confirmed her "poor judgment and willingness to endanger her children's safety due to substance abuse"]; *In re Alexis E* (2009) 171 Cal.App.4th 438, 453 ["[W]e have no quarrel with Father's assertion that his use of medical marijuana, *without more*, cannot support a jurisdiction finding that such use brings the minors within the jurisdiction of the dependency court, not any more than his use of the medications prescribed for him by his psychiatrist brings the children within the jurisdiction of the court. However, we have just set out the 'more' that supports the court's finding that his use of medical marijuana presents a risk of harm to the minors"]; cf. *In re David M., supra,* 134 Cal.App.4th at p. 829 [insufficient evidence that mother's marijuana use posed risk of harm to infant when infant did not test positive for drugs at birth and no evidence mother used drugs during her pregnancy].)[8]

2. *Substantial Evidence Supports the Disposition Order Removing Jimmy from Q.M.'s Custody*

Q.M. contends there is insufficient evidence to support the court's finding there was no reasonable means to protect Jimmy other than to remove him from her custody. (See § 361, subd. (c)(1) [dependent child may not be taken from physical custody of his or her parents unless court finds by clear and convincing evidence there would be substantial danger to health, safety, protection or physical or emotional well-being if the child were returned].) The Department and Jimmy's counsel acknowledged Q.M. loved Jimmy and appeared to be taking steps to remedy the problems that had led both to the initiation of the instant petition and the loss of her parental rights over Emily, but expressed concern about Q.M.'s inconsistent attendance in drug treatment programs and

---

[8]    In fact, *Drake M.* actually reinforces our conclusion that Q.M.'s repeated marijuana use and her poor choices connected with it put Jimmy at substantial risk of harm. As that court observed, when, as here, the child in question is of "tender years" (see *Rocco M., supra,* 1 Cal.App.4th at p. 824), "the finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of harm." (*Drake M., supra,* 211 Cal.App.4th at p. 767; accord, *Rocco M.,* at p. 824; *Christopher R., supra,* 225 Cal.App.4th at p. 1219.)

8

missed drug tests and urged the court to remove Jimmy from Q.M.'s custody until Q.M. had meaningfully addressed her marijuana problem and comprehended its effect on her parenting choices. The court agreed and found additional insight and treatment were necessary before Jimmy could safely be returned to Q.M.'s custody. For the reasons we have explained, substantial evidence supports that determination.

## DISPOSITION

The jurisdiction finding and disposition order are affirmed.


PERLUSS, P. J.


We concur:


ZELON, J.


SEGAL, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.